UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal Case No. 26-mj-45 (KMM/DTS)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JOSE ROBERTO RAMIREZ ,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **DEFENDANT'S RESPONSE TO GOVERNMENT'S OBJECTION TO REPORT AND RECOMMENDATION** |

Defendant Jose Roberto Ramirez, through undersigned counsel, hereby responds to the Government's Objection to Report and Recommendation (Doc. 68). The government objects to the portion of the Magistrate Judge's R&R filed on August 21, 2026 (Doc. 65) which concluded that the government agent's stop of Mr. Ramirez was not supported by reasonable suspicion and therefore violated Mr. Ramirez's Fourth Amendment rights. It is not clear and the government provides no explanation as to how this conclusion has any substantive effect on the government's case because the Magistrate Judge's ultimately recommended that evidence of the actual alleged criminal conduct not be suppressed. The government's concern appears to be with the Magistrate Judge's negative findings about Deportation Officer Rivera's conduct and that his testimony lacked credibility rather than the actual impact of the recommendation which appears to be non-existent.[1] The government also requests that the Court receive further evidence. This memorandum

[1] However, if the Court upholds Mr. Ramirez's objection to the R&R and hold that all evidence must be suppressed or dismisses the case, then DO Rivera's conduct and credibility do become materially relevant.

explains that the R&R's findings and conclusions regarding DO Rivera's conduct and credibility were correct and solidly grounded, and that there is no basis for the Court to receive further evidence.

## I. THE R&R CORRECTLY CONCLUDED THAT THERE WAS NO REASONABLE SUSPICION TO STOP MR. RAMIREZ.

The government first asserts that the Magistrate Judge's direct quote of DO Rivera's explanation of how Mr. Ramirez matched the description of the government target was a "material oversimplification." (Doc. 68 at 3). The R&R's paraphrase of DO Rivera's explanation of Mr. Ramirez's common features consisted of being a male of Hispanic origin with medium complexion and black hair was an accurate and complete recitation of Rivera's testimony. In fact, DO Rivera was asked numerous times about how Ramirez fit the description and at no time did he add any other characteristics. (Hearing Transcript, Doc. 45 at 8:20-9:3, 11:21-22, 14:4-6, 26:2-21, 51:1-9, 51:22-52:10, 53:13-17, 53:21-25). Every time DO Rivera discussed the commonalities between Mr. Ramirez and the target description, he only repeated the same four characteristics: male, Hispanic origin, black hair, medium complexion. One exchange was particularly representative:

> Q. So you decide to follow this BMW because the person in there matched this description of being an Hispanic male with dark hair and medium complexion, right?
> A. We followed the vehicle because he appeared to match the primary subject.
> Q. Meaning, the black hair, medium complexion, and looking Hispanic?
> A. At that point in time, the view that we had, he appeared to match with those features of black hair, medium complexion.

> Q. So I'm just trying to ascertain the features. So those are the features. No other features?
> A. That's all we had to view at that point in time.

(Hearing Tr. at 51:22-52:10). DO Rivera made clear that he observed no other commonality between ICE's target and Mr. Ramirez.

The government futility attempts to rescue DO Rivera's woefully inadequate description by imagining that there was more. It claims that because at some point Rivera stated, "His appearance appeared to match the primary target's appearance" that somehow Rivera must have also been relying on other common features between the target's photograph and Ramirez. (Govt. Objection, Doc. 68 at 3-4 (citing Tr., Doc. 45 at 14)). However, the prosecutor's careful post-hoc study of the target's photograph and Mr. Ramirez is not evidence of what features the agent observed. DO Rivera's testimony is the only evidence of what common he features he observed.

As the R&R pointed out, and the government does not even attempt to refute, "the record does not establish that Agent Rivera ever got a good look at Ramirez." (Doc. 64 at 17). The R&R explains that the record shows at most that "Agent Rivera only saw Ramirez at a distance through two car windows." (Doc. 64 at 17-18). The commonalities that the prosecutor claims to observe based on careful observation of the photographs are not what DO Rivera observed before he stopped Mr. Ramirez. If Rivera had observed any other common features between Ramirez and the photo of the target, he would have

certainly pointed some of them out during one or more of the eight times he testified about the subject.

The government's contention that DO Rivera's suspicion of Mr. Ramirez was based on more than four basic common physical characteristics is wishful thinking, unsupported by any evidence in the record. The R&R's conclusion that DO Rivera decided to stop Mr. Ramirez based on raw racial profiling is the only conclusion supported by the record. A conclusion that is amply and repeatedly supported in the record.

Since the remainder of the government's argument supporting its position that Rivera had reasonable suspicion of the stop is hinged on the false premise that DO Rivera's identification of Mr. Ramirez was based on more than just his gender, racial appearance, general skin complexion and hair color, its argument necessarily fails.

The government first tries to negate the R&R's analysis distinguishing the instant case from United States v. LeMons, 84 F.4th 766, 768 (8th Cir. 2023) which upheld reasonable suspicion based in part on the defendant and suspect both being African American, having a stock build, full head of hair, facial hair and appearing to be in their twenties.  There are more common physical features than in the instant case, but most significantly the government leaves out multiple other grounds upon which the court relied to find reasonable suspicion that the defendant was the suspect. These included the time of the encounter not long after police had begun surveillance, place of the encounter

which was a high crime area and the suspect was a violent fugitive, that the defendant was entered an appartment associated with an armed and dangerous fugitive, and that the defendant engaged in furtive behavior and took numerous actions to evade police when he observed them. Id. at 770. In the instant case, it was established at the hearing that agents had not observed Mr. Ramirez enter the believed residence of the suspected target, there is no indication of any proximity of time that would be relevant to the underlying issue of illegal presence in the United States, and Mr. Ramirez had not done anything to evade agents. While the R&R correctly found that there was insufficient evidence to support DO Rivera's allegations that Mr. Ramirez engaged in evasive driving due to Rivera's lack of credibility, even if Ramirez had tried to evade agents when they began to pursue him, he understandably feared for his safety given the many well known and documented incidents of violent abuse of residents by federal agents including murder in the course of the militarized federal occupation of the Twin Cities. This latter dynamic which is not present in other cases where citizens are deemed suspect for avoiding law enforcement is critical when analyzing the totality of the circumstances.

Similarly in United States v. Lopez-Tubac, 943 F.3d. 1156, 1157-58 (8th Cir. 2019), the finding of reasonable suspicion was not based just on a match of common physical features including eye and hair color, and being short and heavy,[2] but also the

[2] Although the defendant turned out to be 30 pounds lighter than the description, there was no indication of height difference, and a 5'3" person who was 157 pounds rather than 187 pounds would still at least be stocky.

officer was able to observe the suspect from 30 feet for ten to fifteen seconds while outside of a vehicle and determine he looked like the person in their photo. The appeals court also relied on other factors to support reasonable suspicion to stop the defendant including that the car was registered in another person's name, the car was registered at the address where the suspect was believed to reside, the mobile home park manager confirmed the suspect lived at that address, and he was previously arrested at that address. Id. at 1160. In the instant case the Magistrate Judge correctly found that DO Rivera did not have a good look at Mr. Ramirez, and there was no connection made between the vehicle he was driving, the address and the suspect. While the government asserts tries to liken DO Rivera's limited look at Mr. Ramirez to Lopez-Tubac it is clear that the record shows that DO Rivera has less ability in terms of time and vantage point to observe Ramirez, there were fewer common physical characteristics and perhaps most significantly there were not investigative details to support a reasonable belief that Mr. Ramirez was the suspect agents were looking for.

The final case that the R&R and the government cite for comparison, United States v. Phillips, 679 F.3d 995 (8th Cir. 2012). The suspect in the booking photo was a black male in is mid-thirties, six feet tall, 215 pounds, and bald. Id. at 996. The offices observed their subject walking on a sidewalk, and then later believed they saw him as a passenger in a car because his "bald head really stuck out. Id. The court concluded that police reasonably suspected the subject was the suspect based on the matching description of

height and weight, age, race and baldness. Id. at 998. This was more than "a generic description as claimed by the government. (Doc. 68 at 3). Unlike the instant case where the only characteristics were gender, ethnicity and hair color, the identification in Phillips also included height (taller than average) and weight, and the distinctive feature of baldness where the defendant's head stood out to the point of convincing the officer of the identification. Although the reasonableness of the stop in Phillips appears to push the lower limits of reasonableness, it was still supported by substantially stronger facts than the instant case.

The government next tries to distinguish United States v. Brignon-Ponce, 422 U.S. 873 (1975) which the R&R cited as authority for the invalidity of a stop based on race and ethnicity. Brignon-Ponce held that the likelihood that a person is of Mexican ancestry is an alien is not sufficient by itself to stop all Mexican-Americans to ask if they are alients. Id. at 886-887. As that decision points out, "Large numbers of native-born and naturalized citizens have the physical characteristics identified with Mexican ancestry, and even in the border area a relatively small proportion of them are aliens." Id. at 886. The record indicates in the instant case that even though Mr. Ramirez may have a Latino appearance, he is a naturally born citizen with Native American ancestry. The government argues that the instant case is different because it was not based on just "Hispanic appearance" but also other physical features. In reality, there is no material difference between the instant case and the raw racial profiling in Brignon-Ponce. The dark hair and medium

complexion are features that are inextricably associated with Hispanic ancestry. Male gender is common to half the population and therefore does not meaningfully contribute to reasonable suspicions. The government attempts to add more features that the prosecutor found in the photo but as discussed above were not noticed or utilized by DO Rivera as part of his attempted identification. The government finally claims that Mr. Ramirez being in the vicinity of the suspect's believed last known address is an additional factor supporting reasonable suspicion. A Hispanic male driving through a densely populated urban area does no more to contribute to reasonable suspicion than being within 100 miles of the border as in Brignon-Ponce.

The government finally tries to paper over the R&R's observation that DO Rivera and other agents tried to stop multiple Hispanic appearing males in the area without any other basis thereby supporting the conclusion that the stop was based on racial profiling. The government claims this is justifiable because the standard for reasonable suspicion is low enough so that multiple people can meet a general description, and "officers needed to see each individual up-close before precluding any as a match." (Doc. 68 at 10). The government's argument demonstrates exactly why such raw racial profiling cannot be acceptable. The prosecution has sunken to the lows of HSI in endorsing the position that anyone can be stopped based on apparent racial or ethnic origin. They now urge the Court to allow government agents to stop every person fitting their racial profile so that they can figure out if that person is their suspect or is otherwise here illegally. This is precisely the

practice that the Fourth Amendment is designed to prevent, and a principle that the Court must enforce.

## II. THE R&R CORRECTLY FOUND THAT OFFICER RIVERA WAS NOT A CREDIBLE WITNESS.

The government next spends substantial effort to attempt to challenge the Magistrate Judge's determination that DO Rivera is not a credible witness. This finding was based on detailed analysis including extensive quotes from Rivera's testimony, and the Magistrate's own in-person observation of the Rivera's "demeanor during the 100 minutes he was on the witness stand." (Doc. 64 at 9 n. 4). The government tries to paint Rivera's testimony as merely "awkward testimony that might reasonably be expected from a brand-new agent." (Doc. 68 at 11). The government, however, implicitly concedes throughout its argument that DO Rivera was unable to provide details of many parts of the encounter and often gave non-responsive answers to the questions. It argues that Rivera's testimony is not "inherently implausible." (Doc. 68 at 13).

The government misunderstands the applicable standards in multiple respects. First, it cannot properly refute a judicial officer's reasoned determination about a witness' credibility by merely presenting an alternative explanation. At the same time that it faults the R&R for not somehow demonstrating the evidence irrefutably demonstrates Rivera is not credible, the government provides its own speculative theory to explain Rivera's weak testimony. It is the responsibility of the impartial judicial officer rather than counsel for a litigant to substantively analyze the witness' testimony, observe the witness' demeanor and

arrive a a reasoned determination as to whether the witness is credible. The Magistrate Judge clearly met these requirements by it carefully and thoroughly reasoned findings and conclusions. There is no basis for the Court to reject the R&R's determination of Rivera's credibility based merely on the government's attempts to provide alternative unsupported explanations.

The government's challenge to the R&R's determination of credibility is also flawed because it focuses on trying to demonstrate that the indisputably problematic testimony was due to inexperience rather than lack of credibility. The government appears to be arguing that Rivera's should not be found to lack credibility because he was not intentionally testifying falsely. This misses the point. The R&R does not contain any explicit findings that Rivera intentionally lied. That is not necessary. Whether the very poor quality of Rivera's testimony was due lying or inexperience, the effect is still the same. The testimony is not credible. That fact that it took repeated questioning taking up pages and pages of transcript before DO Rivera would answer a straightforward question, and in some instances never answered the question, provides sufficient grounds for determining that Rivera was not a reliable or credible witness. The fact that Rivera could not recall numerous significant facts about the incident - a total of eight listed in the R&R including even whether or not he was diagnosed with a concussion (Doc. 64 at 15-16), provides sufficient grounds for determining that Rivera was not a reliable or credible witness. The fact that DO Rivera was indisputably inexperienced and appeared to be

poorly trained, also supported the determination that he was not a reliable or credible witness.

Although the R&R correctly found DO Rivera's testimony not to be credible, even if that finding were put aside, it would not affect the conclusion that he stopped Mr. Ramirez without the requisite reasonable suspicion. DO Rivera testified repeatedly that he he had no grounds for suspecting Mr. Ramirez beyond his ethnic appearance and basic physical features that comprised his Hispanic appearance. The stop still violated the Fourth Amendment.

## III. THERE IS NO JUSTIFICATION TO PRESENT MORE EVIDENCE.

The government finally request to add into the record the post-arrest interview of Mr. Ramirez and possibly call more agents to testify. The additional evidence is not justified and not significant. The government provides no explanation as to why it could not have introduced the recording of Mr. Ramirez's interrogation or called other agents to testify at the original hearing. The interview existed and was in the possession of the government at that time. The government knew the identities of agents involved in the stop and arrest long before the hearing.

The government's claimed reason for introducing the recorded interrogation appears to be to corroborate their claim that Mr. Ramirez speeding in response to agents pursuing him. The government knew that it had the burden to prove reasonable suspicion for the stop. If it believed that Mr. Ramirez's statements supported reasonable suspicion,

it was incumbent on the government to introduce that known evidence at the hearing. If the government had sought to introduce the evidence, Mr. Ramirez would have demanded that the government lay proper foundation. That would have required an interrogating agent to testify. This would have provided the opportunity for Mr. Ramirez to cross examine the about the circumstances of the interrogation and the limitations of Ramirez's statements. It should not be necessary to convene a second evidentiary hearing to presented evidence that could have easily been offered as part of one hearing. Further, Mr. Ramirez is prejudiced because the further development of the issues in the case would afford the government an opportunity to provide a greater amount of preparation and coaching of the witnesses than it would have been able to provide at the time of the first hearing.

The government has further failed to make a showing that the evidence in the interrogation is material. It asserts that Mr. Ramirez's description of the agents "chasing" corroborates DO Rivera's testimony that Ramirez was speeding. The use of this word does not demonstrate that Mr. Ramirez was speeding. It could just as easily mean that the agents were persistently following Mr. Ramirez. There is no claim that Mr. Ramirez actually admitted to speeding or violating any traffic laws. Even if he were speeding or believed himself to be speeding - which again is not shown by his statements, it would not affect the determination that DO Rivera failed to provide testimony sufficient to establish that he reasonably believed that Mr. Ramirez was speeding. Even if Mr. Ramirez were

speeding, DO Rivera and his colleagues were authorized to enforce immigration laws and not traffic laws.

The government finally states that he might want to call other agents to corroborate DO Rivera's testimony. It does not specify whom it would call as a witness(es), substance of the proposed testimony, or how it would be material. The Court should not entertain the prospect of holding an additional hearing to call more witnesses without any offer of proof.

## CONCLUSION

For the foregoing reasons, Mr. Ramirez respectfully requests that the Court overrule the government's objection to the Magistrate Judge's Report and Recommendation.

Dated: September 28, 2026 LAW OFFICE OF JORDAN S. KUSHNER

By s/Jordan S. Kushner
JORDAN S. KUSHNER
Attorney ID 219307
Attorney for Defendant
431 South 7th Street, Suite 2446
Minneapolis, Minnesota 55415
(612) 288-0545
jskushner@gmail.com